UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERIK LAMONT BRYANT,

               Plaintiff,

     v.                                      **DECISION AND ORDER**
                                                19-CV-6403S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____


      1.     Plaintiff Erik Lamont Bryant brings this action pursuant to the Social Security

Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security

that denied his application for disability insurance benefits under Title II and for

supplemental security income under Title XVI of the Act.  (Docket No. 1.) The Court has

jurisdiction over this action under 42 U.S.C. § 405(g).

      2.     Plaintiff protectively filed his Title II application with the Social Security

Administration on December 26, 2015. (R.[1] at 650.) Plaintiff also filed a Title XVI

application for supplemental security income on May 8, 2017. (Id.) Plaintiff alleged

disability beginning on November 21, 2015, due to left shoulder, left knee, and heartburn.

(R. at 691.) Plaintiff's application was denied, and Plaintiff thereafter requested a hearing

before an administrative law judge ("ALJ"). On April 27, 2018, ALJ Brian Curley held a

hearing, at which Plaintiff, represented by his attorney, appeared and testified. (R. at 648-

89.) Vocational Expert Larry Takki also appeared and testified by telephone. At the time

of the hearing, Plaintiff was 46 years old, with a twelfth-grade education and some college,

_____

[1] Citations to the underlying administrative record are designated as "R."

and prior work experience as a delivery person, assistant manager, and airport security screener. (R. at 690, 655-58.)

3.     The ALJ considered the case *de novo* and, on May 21, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 97-111.) On April 4, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on May 31, 2019, challenging the Commissioner's final decision.[2]

4.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 11, 14.) Plaintiff filed a response on February 28, 2020 (Docket No. 16), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's May 21, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.    "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.     If the claimant is found disabled at any point, the Commissioner must also determine if his disability continues through the date of the decision. To find that it does not, the Commissioner must show that medical improvement has occurred which is

4

related to the claimant's ability to work, or that an exception applies. 20 C.F.R. §§ 404.1594(a) and 416.994(a).

11.     To determine whether the claimant remains disabled and able to receive supplemental security income, the Commissioner required to utilize a seven-step sequential analysis, considering: (1) whether or not the claimant has an impairment or combination of impairments which meet or equal the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Social Security Regulations; (2) if the claimant does not have such an impairment, whether there has been medical improvement in the claimant's condition; (3) whether the claimant's medical improvement is related to his or her ability to do work, i.e. whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination; (4) if the claimant was determined to have no medical improvement or if any medical improvement was determined to be unrelated to ability to work, whether any of the specified exceptions apply; (5) whether or not the claimant's current impairments, either individually or in combination, are severe; (6) whether the claimant can still do work that he or she has performed in the past; and (7) whether the claimant can do other work if not able to perform work done in the past. Rodriguez v. Saul, No. 18-CV-01401 MJP, 2020 WL 5200691, at *3 (W.D.N.Y. Sept. 1, 2020) (citing O'Connor v. Astrue, No. 07-CV-141, 2009 WL 3273887, at *3–4 (W.D.N.Y. Oct. 9, 2009)); 20 C.F.R. § 416.994(b)(5)(i)–(vii).

12.     For a Title II claim for disability insurance benefits, the Commissioner must also determine if the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1).

13.     The ALJ analyzed Plaintiff's claim for benefits under the processes set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 21, 2015. (R. at 101.)  At step two, the ALJ found that Plaintiff has the severe impairments of degenerative joint disease of the left shoulder and left knee, status post surgery, diabetes mellitus, obesity, and hypertension. (R. at 101.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 102, 107.)

14.     The ALJ then found that between November 21, 2015, and April 12, 2018, Plaintiff had the residual functional capacity ("RFC") to

> Perform sedentary work…. Except: he requires a cane for balance and ambulation; he is limited to frequent overhead reaching with his left upper extremity; avoid concentrated exposure to extreme cold; he would be absent from work at least 2 days per month or off-task in the workplace more than 20% of the workday on a regular and continuing basis.

(R. at 102.)

15.     At step four, the ALJ found that Plaintiff was unable to perform any past relevant work between November 21, 2015, and April 12, 2018. (R. at 105.) At step five, the ALJ found that between November 21, 2015, and April 12, 2018, there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Id.) Accordingly, the ALJ found that Plaintiff was disabled during that period. (R. at 107.)

16.     Turning to the analysis for medical improvement, the ALJ found that Plaintiff's severe impairments as of April 13, 2018, are the same as those present from November 21, 2015, to April 12, 2018. (Id.)

6

17.     The ALJ then found that Plaintiff experienced medical improvement as of April 13, 2018. (Id.) The ALJ further found that the medical improvement is related to the ability to work because there was an increase in Plaintiff's residual functional capacity. (Id.). The ALJ found that, beginning April 13, 2018, Plaintiff had the RFC to

> Perform light work … except: he can sit, stand, or walk for 6 hours each during an 8-hour workday; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally kneel, crouch, or crawl; frequently balance or stoop; frequently overhead reach with the left, non-dominant upper extremity; avoid concentrated exposure to extreme cold.

(R. at 107.)

18.     The ALJ found that Plaintiff is still unable to perform past relevant work, but that there are jobs that exist in significant numbers that the national economy that Plaintiff can perform. (R. at 109-10.)  The ALJ therefore concluded that Plaintiff's disability ended April 13, 2018, and that Plaintiff has not become disabled again since that date. (R. at 110.)

19.     Plaintiff argues that the ALJ's finding of medical improvement is not based on substantial evidence. For the following reasons, this Court agrees.

20.     Plaintiff experienced left shoulder and left knee problems throughout the period from November 2015 through the decision date.  He injured his left shoulder in May 2014, and Dr. John Goldblatt performed surgery on his shoulder in June 2014. (R. at 866, 881-83, 1115.) He reinjured his shoulder at work in October 2015. (R. at 894.) Plaintiff injured his left knee at work in June 2015. (R. at 931, 935.) He underwent knee surgery with Dr. Michael Maloney in April 2016, but then reinjured his knee in a vehicle collision in May 2016. (R. at 1459, 1049, 2547.) He had further knee surgery in September

2017, in which two screws were inserted in his knee. (R. at 1529-30, 2554.) In the months following this surgery, Plaintiff expressed that the screws were causing pain, and frequently asked to have them removed, but his doctor informed him could not happen until one year after his surgery. (R. at 209.) On April 5, 2018, Dr. Maloney stated that Plaintiff still had some "mechanical type symptoms likely due to muscle imbalance," that his remaining pain was due to hardware placement, and that Plaintiff may be a surgery candidate for hardware removal surgery. (Id.) Dr. Maloney stated Plaintiff had difficulties with ongoing strengthening exercises, and that he had encouraged Plaintiff to build some endurance. (Id.). Dr. Maloney did not assess Plaintiff's functional limitations, but assessed him at 50% disability. (Id.) Dr. Maloney's statement is copied verbatim on a workers' compensation form. (R. at 4819.)

21.    The ALJ found that the record supported a finding of disability up to April 12, 2018. He found that the medical opinion evidence supported that Plaintiff would be absent from work, off-task, and would need an assistive device to walk. (R. at 103.)

22.    In assessing the medical record for this first period, the ALJ gave only partial weight to assessments by Dr. Maloney and Dr. Goldblatt rating Plaintiff's disability in terms of percentages. (R. at 103.) The ALJ explained this by noting that the percentages varied widely, consistent with Plaintiff's variable condition in the midst of treatment. (Id.) He noted that Dr. Maloney assessed Plaintiff as able to work full time in August 2017, just a month before his second knee surgery and that Dr. Maloney then assessed Plaintiff at 100% disability in December 2017. (R. at 104.)

23.     The ALJ then found that Plaintiff's symptoms improved as of April 13, 2018, such that he was now able to work at a light exertional level, but was limited to "frequent overhead reaching". (R. 108).

24.     The ALJ based his finding of medical improvement largely on statements by Drs. Maloney and Goldblatt, finding that this evidence showed "benign findings" and demonstrated a conservative course of treatment (R. at 108.) The ALJ noted that the change from Dr. Maloney's assessment of 100% disabled in December 2017 to 50% disabled in April 2018 represented "significant improvement." (R. at 108.) The ALJ therefore concluded that Plaintiff was capable of light work as of April 13, 2018. (Id.)

25.     "Medical improvement is defined as any decrease in the medical severity of a claimant's impairment which was present at the time of the most recent favorable medical decision that he or she was disabled or continues to be disabled." Abril v. Comm'r of Soc. Sec., No. 17-CV-6883L, 2019 WL 1552022, at *2 (W.D.N.Y. Apr. 10, 2019). "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [a claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1).

26.     However, where "the medical findings and reports merely diagnose the claimant's impairments without relating the diagnoses to specific physical, mental, and other work-related capacities, the administrative law judge's 'determination of residual functional capacity without a medical advisor's assessment of those capacities is not supported by substantial evidence.'" Militello v. Comm'r of Soc. Sec., No. 17-CV-1046-JWF, 2019 WL 1409711, at *3 (W.D.N.Y. Mar. 28, 2019) (quoting Palascak v. Colvin, No. 1:11-CV-592, 2014 WL 1920510, at *9 (W.D.N.Y. May 14, 2014)).

27.     "Neither a reviewing judge nor the Commissioner is 'permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion' ... or indeed for any 'competent medical opinion.'" Burgess v. Astrue, 537 F.3d 117, 131 (2d Cir. 2008) (citing Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)). The ALJ appears to have done just this this in finding Plaintiff's knee improved as of April 13, 2018.

28.     Here, the record does not contain any medical opinion regarding the improvement of Plaintiff's knee after April 13, 2018. Rather, the ALJ based this finding on Dr. Maloney's observation that Plaintiff needed muscle strengthening and Plaintiff's "generally conservative" course of treatment. These do not constitute functional assessments of Plaintiff's physical abilities, and therefore cannot constitute sufficient evidence that Plaintiff was not disabled.  See Bayer v. Comm'r of Soc. Sec., No. 19-CV-0009MWP, 2020 WL 3481451, at *6 (W.D.N.Y. June 26, 2020).

29.     Plaintiff also argues that the ALJ's reliance on Dr. Maloney's changing percentages of disability was error. This Court agrees. In connection with Plaintiff's workers' compensation claim, Dr. Maloney's calculated Plaintiff's percentage of temporary impairment as: 50% on February 22, 2017; 20% on June 1, 2017; 100% on December 2017; and 50% on April 12, 2018. (See R. at 3268, 3017, 2564, 4819.) The ALJ acknowledged the limited usefulness of these percentages in assessing Plaintiff's disability before April 2018 due to their fluctuation. (R. at 104). But in finding Plaintiff not disabled as of April 13, 2018, the ALJ stated that the change from 100% to 50% supported his finding of no disability.  (R. at 108.)

30.     Opinions providing percentages of disability for the purpose of state workers' compensation claim are not entitled to weight in social security determinations.

Brush v. Berryhill, 294 F. Supp. 3d 241, 258 (S.D.N.Y. 2018) (citing 20 C.F.R. § 404.1504). First, they take over the Commissioner's role in determining the ultimate question of disability and second, they are not function-by-function assessments. See Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984) (noting that Social Security disability determinations "are not geared to a percentage of disability, as are worker's compensation disability conclusions" and thus "the ALJ could reasonably disregard so much of the physicians' reports as set forth their conclusions as to [the claimant's] disability for worker's compensation purposes."); accord Ackley v. Colvin, 2015 WL 1915133, at *5 (W.D.N.Y. Apr. 27, 2015). Given that these percentages are not entitled to weight in determining disability, and given that the ALJ found them of limited use due to their fluctuation before April 2018, it is not clear how a subsequent fluctuation in percentages could constitute substantial evidence in support of an RFC determination.

31.    The ALJ's assessment of Dr. Goldblatt's medical opinion is similarly problematic. Dr. Goldblatt's May 1, 2018, opinion, to which the ALJ gave "significant weight," states that Plaintiff's "left shoulder demonstrates painful limited range of motion," and that Plaintiff should "avoid repetitive overhead lifting" more than 15 pounds. (R. at 4825.) The opinion also indicates that Plaintiff could reach, including overhead, "0%" of the time. (R. at 4826.)

32.    The ALJ limited Plaintiff to "frequent" overhead reaching, finding that additional limitations were not supported by the record. But the ALJ did not explain how "frequent" reaching—defined  in the regulations as between one third and two thirds of an eight-hour workday—accounts for Dr. Goldblatt's caution to avoid "repetitive" lifting, let alone his indication that Plaintiff could not lift overhead at all. See Titles II & Xvi:

<u>Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2</u>, SSR 83-10 (S.S.A. 1983) ("'Frequent' means occurring from one-third to two-thirds of the time.").

33.     If there was evidence in the record supporting Plaintiff's ability to lift overhead up to two thirds of an eight-hour workday, the ALJ should have cited it. Without such evidence, the ALJ's RFC determination that Plaintiff could "frequently lift overhead" is not supported by substantial evidence.

34.     Plaintiff also argues that the ALJ failed to reconcile inconsistencies between the opinion of Dr. Harbinder Toor and the ALJ's RFC determination, and failed to consider Plaintiff's need for a cane to ambulate. Because remand is warranted on other grounds, this Court will not consider these arguments here.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        September 29, 2020
              Buffalo, New York

                                             s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                         United States District Judge